## Grammer v. Commonwealth.

(Decided January 24, 1928.)

### Appeal from Harlan Circuit Court.

Homicide.—Evidence held sufficient to support conviction for murder, where defendant went to deceased's boarding house, waited

for him to return, accompanied him to porch at his suggestion, and shot and killed him there.

F. M. JONES and W. A. BROCK for appellant.

J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

On the 24th day of January, 1927, the appellant, Mrs. Otis Grammer, shot and killed Fred Miller in Harlan county. She lived at Pansy, a little mining town located near Bardo, another little mining town. The man that she killed had stayed at her home a few weeks before he was killed, but he had left her home and gone to the home of Jess Mercer, where he was boarding at the time of his death. The appellant was married and lived at her home with her husband and children. On the evening of the day of the tragedy, after her husband had gone to his work, it appearing that he worked at night, she took a pistol and went to the home of the Mercers in Bardo. She arrived there after dark. She inquired if Fred Miller boarded there, and, upon being informed that he did and told that he had left the house a short while before to go to church, she requested permission to wait until he returned. He had accompanied a young lady to church. The appellant waited for him about two hours. The time was spent in playing the Victrola and in social intercourse with the Mercer family and others who boarded with them. When Fred Miller came in with the young lady, appellant addressed him, saying at the time that she had heard he was sick, or that she thought he must be sick. He spoke to her in response to her salutation, and, after she had played another record on the Victrola, she requested him to go home with her. He gave no answer to this request, and she made a second request. He said to her then that he would like to speak to her out on the porch. She obtained her sweater and walked out on the porch behind him, pulling the door to after her. She was then heard to tell him that he must get his cap and go home with her, and, immediately after this statement was heard by the witnesses, five shots were fired. When those in the house went out on the porch, they found the deceased lying on the floor in a dying condition. A doctor was sent for and arrived about fifteen minutes later. The victim died within a few minutes thereafter without having made any statement. The appellant stood by

with her pistol in her hand, apparently trying to extract the hulls for the purpose of reloading. She requested some one of those who came on the porch to reload the pistol for her.

After the killing, she saw Chester Lyttle and told him that she had killed Fred Miller, or that she hoped she had killed him. She requested Lyttle to take her home. A deputy sheriff was called in, and she told him substantially the same thing. When she was later delivered to the sheriff, she told him that she supposed the reason she killed Miller was because she was a little jealous. She stated that she saw Miller and the young lady come into a room upon their return from church, and that she concealed herself in a wardrobe, and when she came out she found the young lady sitting in Miller's lap. She said to the sheriff that she lost control of herself and killed Miller.

She testified that she had known Miller for about eighteen months. She denied the statements attributed to her by the witnesses for the commonwealth. She gave, as a reason for going to the home of the Mercers whom she did not know and they did not know her, that, when Miller left her home, he took with him some trinkets that belonged to her, and that she called at the home of the Mercers to ascertain whether he had the trinkets. She stated that her husband had been angry at her about the disappearance of these trinkets, and that it was her desire to repossess herself of them. She stated that after she arrived at the home of the Mercers she requested permission of Mrs. Mercer to search the suitcase of Miller, and, upon this permission being granted, she made the search and found some of the articles she was seeking. She denied that she asked Miller to go home with her, but admitted that he asked her to go with him out on the porch. As soon as they were on the porch and the door was closed, she testified that Miller said to her that she had exposed him and that he was going to kill her, whereupon he seized her by the throat and began choking her, when she shot him in an effort to protect her own life.

The jury had before it the evidence of all the witnesses, and the verdict was that she should be punished by life imprisonment. There is no doubt in our mind that the verdict is not only in accordance with the weight of the evidence, but the evidence largely preponderates in favor of the verdict of the jury.

Some complaint is made about the instructions. They are as follows:

"No. 1. If the jury shall believe from the evidence to the exclusion of a reasonable doubt that in Harlan county, state of Kentucky, and before the finding of the indictment herein, the defendant, Otis Grammer, did unlawfully, wilfully, feloniously, and with her malice aforethought, so shoot and wound the deceased, Fred Miller, with a loaded pistol as that he soon thereafter died thereby, then you ought to find her guilty of wilful murder as charged in the indictment and fix her punishment at death, or at confinement in the State Penitentiary for and during her natural life, in the discretion of the jury, according to the proof.

"No. 2. If the jury shall not believe from the evidence that the defendant has been proven guilty as set out in instruction No. 1, but shall believe from the evidence to the exclusion of a reasonable doubt that the defendant in this county and before the finding of the indictment herein, in sudden heat of passion or in sudden affray, upon a provocation reasonably calculated to excite the passions of the defendant beyond the power of her control, and without previous malice, did unlawfully, wilfully, and feloniously so shoot and wound the deceased as that he soon thereafter died thereby, with a loaded pistol, then you ought to find the defendant guilty of voluntary manslaughter, included in the indictment, and fix her punishment at confinement in the State Penitentiary for a term of not less than two years and not more than twenty-one years, in the discretion of the jury, according to the proof.

"No. 3. If the jury shall believe from the evidence to the exclusion of a reasonable doubt that the defendant has been proven guilty under instruction No. 1 or No. 2, but shall entertain from the evidence a reasonable doubt as to the degree of the crime, then you ought to find her guilty of the lower offense, voluntary manslaughter, and fix her punishment as set out in instruction No. 2.

"No. 4. Although you may believe from the evidence to the exclusion of a reasonable doubt that the defendant shot and wounded the deceased with a loaded pistol so as that he soon thereafter died, thereby, yet, if you shall believe from the evidence

that at the time she did so, she believed and had reasonable grounds to believe that she was then and there in danger of death or some other great bodily harm, about to be inflicted on her by the deceased, and that it was necessary, or was believed by the defendant in the exercise of a reasonable judgment to be necessary, to so shoot and kill the deceased in order to protect herself from such danger, real or to the defendant apparent, then you ought to acquit the defendant on the grounds of self-defense, or the apparent necessity therefor.

"No. 5. (a) The phrase 'malice aforethought,' as used in the instructions herein, means a predetermination to commit the act of killing, without legal excuse, and it is immaterial how recently or suddenly before the killing such determination was formed. (b) The words 'wilful' and 'willfully,' as used in the indictment and instructions herein, mean intentional, not accidental or involuntary. (c) The word 'feloniously,' as used in the indictment and the instructions herein, means proceeding from an evil heart or purpose, done with the deliberate intention to commit a crime.

"No. 6. The law presumes the defendant innocent until her guilt has been proven by the evidence to the exclusion of a reasonable doubt, and, if upon the whole case the jury entertain a reasonable doubt as to her guilt, then you ought to find her not guilty."

We find no error in them.

Some complaint is made about the admission and rejection of the evidence, but it is of a trivial nature. The record is free from error. The jury and the trial judge have performed their duty well.

Judgment is affirmed.